IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:17-CR-272 (NAM) |
| | ) | |
| v. | ) | |
| | ) | |
| **JEREMY THOMPSON, a/k/a J,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OFFER OF PROOF

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offense(s), and a factual basis for the defendant's guilty plea.  **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

1) **Potential Maximum Penalties:** It is the government's position that the Court can impose the following maximum penalties for the offense(s) to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a) **Maximum term of imprisonment:**  Life, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

   b) **Mandatory minimum term of imprisonment:**  Ten (10) years, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

   c) **Maximum fine:** $10,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

**Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release of at least 8 years and up to life, to begin

after imprisonment. *See* 21 U.S.C. § 841(b)(1)(B). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

Based upon the information known to the government at this time, it is the defendant's position that his prior state felony drug conviction should not subject the defendant, as a matter of law, to increased punishment for the offense of conviction. Should the defendant prevail in his assertion, he would then be subject to a five (5) year mandatory minimum and a forty (40) year maximum term of imprisonment, a fine of up to $5,000,000, and a term of supervised release of at least four (4) years.[1]

- d) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

- e) **Forfeiture:** Pursuant to 21 U.S.C. § 853(a) and (p), the Court may enter an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment, or to any substitute assets, or to a money judgment. as more fully set out below:

    (1) A Money Judgement for $1,000,000.

- f) **Other Adverse Consequences:**

    (1)   Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

    (2)   If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending

---

[1] The government has advised counsel for the defendant of the proper procedure, pursuant to 21 U.S.C. § 851(b) and (c), to challenge the government's § 851 Information.

or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States.  Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. §1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud.  Removal and other immigration consequences are the subject of a separate proceeding.  No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's  automatic    removal from the United States.

(3) A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

2) **Elements of Offense:**

**Count 1 (Marijuana Conspiracy Involving 100 Kilograms or More):**

a) First: two or more persons conspired to knowingly or intentionally distribute or possess with intent to distribute a controlled substance (as described in Count 1 of the Indictment);

b) Second: the defendant joined that conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

    c) Third: As to defendant, the conspiracy involved the distribution or possession with intent to distribute one hundred (100) kilogram or more of marijuana, a Schedule I controlled substance.

3) **Factual Basis for Guilty Plea:**

    a) Between approximately October 2015 and August 2016, in the Northern District of New York, the defendant conspired with Casey Oakes, Benjamin Otis, Deloyd Lesane, and others to possess with intent to distribute and distribute 100 kilograms or more of marijuana.

    b) As part of the conspiracy, the defendant obtained distribution amounts of marijuana from a marijuana source of supply in Canada and smuggled the marijuana via boat, sometimes with the assistance of the co-conspirator Casey Oakes, and others, into the United States, where it was brought to, and temporarily stored at, one or more "stash houses" on the Akwesasne Mohawk Indian Reservation (AMIR).

    c) From the "stash houses" on the reservation, the marijuana was loaded into vehicles, sometimes referred to as "load vehicles," and driven by couriers, or "runners," including but not limited to co-conspirators Casey Oakes and Ben Otis, to the defendant's customer/buyers in various parts of New York State, including but not limited to Rochester, New York City, and to Syracuse buyers and co-conspirators Deloyd Lesane and others.

    d) The defendant typically "fronted" or partially "fronted" the marijuana to his customer/buyers (i.e. the defendant provided the marijuana to his customer/buyers on credit or partial credit.

    e) The defendant paid the couriers, such as Oakes and Otis, for their services as "runners" for the Defendant.

f) The defendant admits that as a result of his participation in the marijuana conspiracy as charged in Count 1 of the Indictment, he is responsible for more than 100 but less than 400 kilograms of marijuana, in that he was personally involved with this amount.

g) The defendant has a prior felony drug conviction, namely, on or about February 25, 2002, in St. Lawrence County Court, the defendant was convicted of Attempted Criminal Sale of a Controlled Substance in the Fifth Degree (case no. 2002-005), in violation of New York State Penal Law, Section 220.31, and on that date was sentenced to 110 days imprisonment and 5 years probation. This conviction is final.

Respectfully submitted,

GRANT C. JAQUITH
United States Attorney

*/s/ Carl G. Eurenius*

Carl G. Eurenius
Assistant United States Attorney
Bar Roll No. 511746

4/16/2018
Date